IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| AMY J. SHAFFER, | CV 09-130-BLG-RFC-CSO |
|---|---|
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Amy J. Shaffer ("Shaffer") initiated this action to obtain judicial review of Defendant Commissioner of Social Security's ("Commissioner's") decision denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433, 1381-1383(c).  Pl.'s Complt. (Court Doc. 3) at 1.

Currently pending before the Court are the parties' cross-motions for summary judgment (Court Docs. 14 & 17).  For the reasons stated below, the Court recommends that the Commissioner's motion (Court Doc. 17) be GRANTED and Shaffer's motion (Court Doc. 14) be DENIED.

I.    PROCEDURAL BACKGROUND

Shaffer filed her application for DIB on July 25, 2003, alleging a disability onset date of September 1, 1982; and filed her SSI application on July 31, 2003, alleging an onset date of April 10, 2002.

Administrative Record ("A.R.") at 31-94, 641-645.  The disability onset date for both applications was later amended to March of 2003.  A.R. at 1244.

Both of Shaffer's applications were denied, A.R. 79-80.  Shaffer filed a timely request for reconsideration, A.R. 77-78; that request was also denied, A.R. at 79-80, 650-652.  Shaffer next filed a request for an administrative hearing.  A.R. 81-82.  The first hearing on Shaffer's applications was held on November 10, 2004, A.R. at 66, and an unfavorable decision was issued by the Administrative Law Judge ("ALJ") on June 30, 2005, A.R. 653-668.

Shaffer timely requested a review of the ALJ's decision by the Appeals Council.  A.R. at 669.  That request was granted and the decision was remanded to the ALJ for further proceedings.  A.R. at 62-65.  A second hearing before an ALJ was held on March 6, 2007, and a second unfavorable decision was issued.  A.R. at 31-47.  Shaffer again timely requested an Appeals Council review, A.R. at 30, but that request was denied making the ALJ's decision final, A.R. at 8-10.  This action was subsequently filed.

II.   STANDARD OF REVIEW

This Court's review is limited.  The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error.  Ryan v. Commr. of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008); 42

U.S.C. § 405(g).  "Substantial evidence is more than a mere scintilla, but less than a preponderance."  Id. (citing <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1214 n. 1 (9th Cir. 2005) (internal quotation marks omitted)).  "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id. (internal quotation marks and citation omitted).  The Court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion, and cannot affirm the ALJ "by isolating a specific quantum of supporting evidence."  <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882 (9th Cir. 2006) (internal quotation marks and citation omitted).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  <u>Thomas v. Barnhart</u>, 278 F.3d 947, 954 (9th Cir. 2002) (internal citation omitted).

III.   <u>BURDEN OF PROOF</u>

A claimant is disabled for purposes of the Social Security Act if: (1) the claimant has a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months, and (2) the impairment or impairments are of

such severity that, considering the claimant's age, education and work experience, the claimant is not only unable to perform previous work, but the claimant cannot "engage in any other kind of substantial gainful work which exists in the national economy." Schneider v. Commr. of Soc. Sec. Admin., 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. § 1382c(a)(3)(A)-(B)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(i)-(v).

1.  The claimant must first show that he or she is not currently engaged in substantial gainful activity. Tackett, 180 F.3d at 1098.

2.  If not so engaged, the claimant must next show that he or she has a severe impairment. Id.

3.  The claimant is conclusively presumed disabled if his or her impairments meet or medically equal one contained in the Listing of Impairments described in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (hereafter "Listing of Impairments"). Id. If the claimant's impairments do not meet or medically equal one listed in the regulations, the analysis proceeds to the fourth step.

4.  If the claimant is still able to perform his or her past relevant work, he or she is not disabled and the analysis ends here. Id. "If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at [this step] and the evaluation proceeds to the fifth and final step." Id. at 1098-1099.

5.  If the claimant is unable to perform his or her past relevant work due to a "severe impairment (or because [he or she does] not have any past relevant work)" the court will

4

> determine if the claimant is able to make an adjustment to perform other work, in light of his or her residual functional capacity, age, education, and work experience.  20 C.F.R. § 404.1520(g).  If an adjustment to other work is possible then the claimant is not disabled.  <u>Tackett</u>, 180 F.3d at 1099.

The claimant bears the burden of proof at steps one through four, but at the fifth step the Commissioner bears the burden of establishing that there is other work in significant numbers in the national economy that the claimant can perform.  <u>Id</u>.  The Commissioner can meet this burden via the testimony of a vocational expert or reference to the Medical-Vocational Guidelines at 20 C.F.R. Pt. 404, Subpt. P, App. 2.  <u>Id</u>.  If the Commissioner is unable to meet this burden then the claimant is disabled and entitled to benefits.  <u>Id</u>.

## V.    <u>THE ALJ's OPINION</u>

The ALJ followed the five step sequential evaluation process when assessing Shaffer's claims.  A.R. at 31-47.  The ALJ first found that Shaffer had not engaged in substantial gainful employment since her amended alleged onset date in March 2003.  A.R. at 36.

Second, the ALJ found that Shaffer had the following severe impairments:  bipolar disorder, anxiety disorder, obesity, sleep apnea, gastroesophageal reflux disease, coronary artery disease (single vessel disease with collateral circulation), and hypothyroidism.  A.R. at 36 (Finding No. 3).  The ALJ further found that the record did not establish impairment with respect to:  hypertension, seasonal

allergies, bilateral heel spurs, back disorder, arthritis, and asthma.
A.R. at 37.

Third, the ALJ found that Shaffer's impairments do not meet or medically equal any impairment in the Listing of Impairments.  A.R. at 38 (Finding No. 4).

Fourth, the ALJ found that Shaffer has the residual functional capacity ("RFC") to:

> [P]erform work that does require exertion above the medium level:  She is able to occasionally (once or twice) lift/carry 50 pounds and frequently lift/carry up to 25 pounds.  She is unlimited in her ability to sit, stand/walk, push/pull, handle (gross manipulation) and finger (fine manipulation).  There are no communicative, visual or environmental limitations.  She has the mental residual functional capacity to work with the public, co-workers, and supervisors but needs to be a low stress work environment as a result of her impairments and symptoms.

A.R. at 39 (Finding No. 5).

The ALJ also found that Shaffer is unable to perform any past relevant work.  A.R. at 45 (Finding No. 6).

Finally, at step five, the ALJ found that Shaffer could perform other jobs existing in significant numbers in the national economy, such as vehicle cleaner, hotel cleaner, car wash attendant, document preparer, or addresser.  A.R. at 45-46 (Finding No. 10).  Consequently, a finding of not disabled was entered.

## VI.   THE PARTIES' ARGUMENTS

### A.   Shaffer's Aguments

Shaffer argues that the Defendant erred by finding that an impairment was not established by the record with respect to her back pain and heel spurs.  Pl's Br. in Support of Motion for Summary Judgment (Court Doc. 15) at 6.  Specifically, Shaffer contends that the Defendant erred by finding that objective medical evidence does not establish a back disorder, id., and that her bilateral heel spurs did not persist 12 months,  id.  Shaffer argues that as a result of these erroneous findings, the ALJ's assessment of her RFC is invalid.  Id. at 7.  With respect to her RFC, Shaffer argues that the ALJ failed to adequately discuss how each part of the physical RFC is supported by the evidence.  Id. at 9-10.

Shaffer also argues that the Defendant erred in finding that her mental impairments did not meet or medically equal one of the mental Listings of Impairments.  Id. at 12.  Shaffer argues that the ALJ improperly rejected the opinions of her treating medical sources.  Id. She contends that, contrary to the opinion of the medical expert, it is clear from the record that her symptoms are not well-managed, her behavior is not always appropriate, and she cannot always be in groups.  Id. at 17-21.  Shaffer contends that the ALJ failed to cite any part of the record supporting his conclusions.  Id. at 17.  Shaffer also argues that she does not provide full-time care for her autistic son, but

has a personal care assistant for her son 13 ½ hours every week.  Id. at 20.  Additionally, she states that her son's father frequently cares for the child.  Id.  Thus, Shaffer argues that it was error for the ALJ to reject the unanimous opinions of her medical providers, that she meets or medically equals one of the Listings of Impairments.

      B.    The Commissioner's Arguments

      In response to Shaffer's arguments, the Commissioner argues that the ALJ did reasonably weigh all of the evidence in the record and properly determined that Shaffer's bipolar and anxiety disorders do not meet or medically equal a Listing.  Def.'s Brief (Court Doc. 18) at 2. The Commissioner argues that the ALJ reasonably discounted the opinions of Shaffer's treating medical sources because those opinions were inconsistent with the testimony of the medical expert, Dr. Marian Martin, and Dr. Martin's opinion was consistent with the record as a whole.  Id. at 5.  Therefore, the Commissioner argues that substantial evidence supports the ALJ's conclusion that Shaffer does not satisfy the criteria necessary for any of the Listings of Impairments.  Id. at 8.

      The Commissioner also argues that the ALJ's physical RFC determination is supported by substantial evidence.  Id. at 10.  The Commissioner asserts that contrary to Shaffer's assertions, "the ALJ did consider the effects of back, foot, and respiratory impairments, as well as her complaints of sleep problems/fatigue."  Id.  The ALJ determined that Shaffer's subjective complaints regarding her

8

symptoms were not entirely consistent with the record.  Id.  Therefore, the Commissioner argues that the ALJ's finding that Shaffer is capable of medium-exertion work is supported by substantial evidence. Id. at 11-13.

VII.  DISCUSSION

The primary issues before the Court are whether the ALJ's decision is free of legal error, and whether substantial evidence supports his decision.  Having reviewed the record, the Court concludes that the ALJ's findings are free of legal error, and are supported by substantial evidence.  Accordingly, the Court will recommend that Shaffer's motion be denied and the Commissioner's motion be granted.

A.  Shaffer's Severe Impairments

1.  Back Disorder

Shaffer argues that the ALJ improperly determined that she does not suffer from a back disorder.  At step two of the sequential analysis, a claimant must show that she suffers from severe impairment.  A claimant must have a "severe medically determinable physical or mental impairment that meets the duration requirement..." to be disabled.  20 C.F.R. § 404.1520(a)(4)(ii).  The regulations state:

> [An] impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques.  A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms... .

9

An impairment is severe if it "significantly limits [the claimant's] ability to do basic work activities[.]" Id. at § 404.1520(c).

The Court concludes that the ALJ properly determined that the record does not establish impairment with respect to Shaffer's back. The ALJ found that Shaffer's allegations of a back disorder were not supported by objective medical evidence. A.R. at 38. In support of this conclusion the ALJ states that despite receiving occasional treatment for back pain, Shaffer was never diagnosed with a back disorder. A.R. at 38. Furthermore, a 1993 radiology report regarding Shaffer's back did not reveal any back problems, A.R. at 984; a 1993 physical examination did not show "any obvious abnormalities," A.R. at 966; and another 1993 physical examination was "benign, and normal," leading Paul E. Wheeler, PA-C/ds to "suspect extreme over-exaggeration of discomfort," A.R. at 962. Additionally, a 1996 radiology report was also normal aside from an "increased degenerative change," A.R. at 982. And, a June 2005 x-ray was again normal. A.R. at 1004.

The evidence Shaffer points to as establishing a severe impairment with respect to her back is an MRI of her spine from October 1993. A.R. at 1138. The results of that MRI were that there was "a minimal disc bulge." Id. The reviewing Doctor questioned whether these bulges were "clinically significant," id., and ruled out a

disc herniation, A.R. at 1139.  As indicated above, subsequent examination of Shaffer's back did not reveal any abnormalities.

The Court concludes that while it is clear that Shaffer did receive periodic treatment for back pain and discomfort, the ALJ's finding that objective medical data did not establish a back impairment is free of legal error and supported by substantial evidence.  The Court's role is not to reweigh the evidence.  As long as a rational interpretation of the evidence supports the ALJ's determination, his decision must be upheld.  <u>Thomas</u>, 278 F.3d at 954.

### 2.   <u>Heel Spurs</u>

Shaffer next argues that the ALJ erred in finding that her heel spurs did not meet the duration requirement.  "Unless [the claimant's] impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months."   20 C.F.R. § 404.1509.  Shaffer claims that there is a long medical history documenting her "general foot problems."  Court Doc. 15 at 8.

In support of this argument,  Shaffer points to evidence regarding heel spurs, plantar facitis, and "toe problems."  <u>Id</u>.  Shaffer made no mention of either toe problems or plantar facitis in her applications for benefits or the hearing before the ALJ.  <u>See</u> A.R. at 98, 1298-1299.  These are separate and distinct conditions with separate diagnoses; a diagnosis of plantar facitis or toe problems does not affect whether Shaffer's heel spurs have met the durational requirements.

11

Furthermore, the toe problem referred to by Shaffer was an ingrown toenail that she had removed on June 6, 2006.  A.R. at 898.  The record indicates that Shaffer has recovered from this procedure.  A.R. at 895.

Shaffer's heel spurs were diagnosed on January 23, 2006.  A.R. at 910.  At the September 12, 2006, hearing Shaffer testified that her heel spurs had been diagnosed "recently," and that no restrictions or limitations had been placed on her due to her heel spurs.  A.R. at 1298-1299.  A February 21, 2006, examination revealed that treatment was progressing satisfactorily.  A.R. at 905.  Furthermore, there is no evidence that Shaffer required assistive devices for walking, and the record indicates that Shaffer continued to ride a bicycle on occasion, drive a car, and walk.  A.R. at 109.  Consequently, the Court concludes that the ALJ's determination that Shaffer's heel spurs did not meet the duration requirement is free of legal error and supported by substantial evidence.  Substantial evidence is only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Ryan, 528 F.3d at 1198.

B.    Listing of Impairments

Shaffer alleges that the ALJ erred by improperly discounting the opinions of her treating medical sources and concluding that Shaffer did not meet or medically equal the criteria for listing of bipolar disorder, § 12.04, or anxiety disorder, § 12.06.  In order to meet or medically equal a listing under either § 12.04 or § 12.06, a claimant

12

must satisfy the A and B criteria or the C criteria.  The Commissioner does not dispute that Shaffer met the A criteria, and neither party argues that the C criteria is applicable.  Thus, Shaffer's only argument is with respect to satisfaction of the B criteria.

"When presented with conflicting medical opinions, the ALJ must determine credibility and resolve the conflict."  Batson, 359 F.3d at 1195.  The regulations require that every medical opinion received, regardless of its source, be evaluated.  20 C.F.R. § 416.927(d).  "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (internal citations omitted).  In a similar vein, the Ninth Circuit has stated that "[t]hose physicians with the most significant clinical relationship with the claimant are generally entitled to more weight than those physicians with lesser relationships."  Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2007).  Where a treating or examining doctor's opinion is uncontradicted, the ALJ must state clear and convincing reasons supported by substantial evidence in order to reject the doctor's opinion.  Ryan, 528 F.3d at 1198.  Even if, as here, "a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."  Id.    Shaffer's treating psychiatrist Dr. Burford found marked or extreme restrictions

with respect to Shaffer's abilities to: (1) carry out short, simple instructions; (2) understand and remember detailed instructions; (3) carry out detailed instructions; and (4) make judgments on simple work related decisions. A.R. at 639. Dr. Burford also found marked or extreme restrictions with respect to Shaffer's abilities to: (1) interact appropriately with the public; (2) interact appropriately with supervisors; (3) interact appropriately with co-workers; (4) respond appropriately to work pressures in a usual work setting; and (5) respond appropriately to changes in a routine work setting. A.R. at 640. In support of his opinion Dr. Burford stated, that the "[o]nly source of this information is the patient's observed mental status and her reports of her symptoms and her functioning." A.R. at 639. This opinion was echoed by Ms. Frisch, a clinical social worker, again apparently based on Shaffer's reports. Frisch's medical source statement does not include any explanations of other clinical findings. A.R. 298-300. The opinions of Dr. Kirsten Morisette and Dr. Justin Smith, A.R. at 1115, 707, that Shaffer was unable to work due to her bipolar disorder were also rejected in favor of Dr. Martin's findings because the ALJ found that the marked or extreme limitations indicated by Drs. Morisette and Smith are not supported by the mental status exam or plaintiff's daily activities. A.R. at 41.

Here, the ALJ rejected the opinions of Shaffer's treating sources in favor of the opinion of the medical expert, Dr. Marian Martin. A.R.

14

at 39.  The opinions of Shaffer's treating sources were contradicted by Dr. Martin who concluded that Shaffer has no more than mild restriction of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration and persistence, or pace due to mental impairments, and no episodes of decompensation.  A.R. at 41.  The ALJ rejected Shaffer's treating medical sources because he found that those opinions "were not well supported" in light of "notes indicating symptoms were fairly managed when Shaffer got on appropriate medications, she is able to interact fairly appropriate [sic] with people most of the time, is able to be in groups, is able to go to church, and is able to take care of her son."  Id. Dr. Martin also noted the absence of any extended periods of hospitalization, which would be expected if Shaffer were markedly or extremely limited in the indicated areas.  Id.  These specific and legitimate reasons need to be supported by substantial evidence to provide an adequate basis for rejecting the opinions of Shaffer's treating sources.

The opinion of a non-examining physician, like Dr. Martin, cannot by itself constitute substantial evidence justifying the rejection of either an examining or treating physician's opinion.  Ryan, 528 F.3d at 1202.  But, "[t]he opinions of non-treating or non-examining physicians may serve as substantial evidence when the opinions are

15

consistent with independent clinical findings or other evidence in the record." <u>Thomas</u>, 278 F.3d at 957.

Here, the Court finds that Dr. Martin's conclusions are consistent with independent clinical findings and other evidence in the record. First, Shaffer's testimony at the hearing supports the findings of Dr. Martin.  Shaffer testified that even when she is in a "down period" she is able to get up and take care of her son when necessary, and continues to be aware of her surroundings and of what is occurring around her.  A.R. at 1308-1309, 1340, 1344.  Additionally, Shaffer also testified that she interacts with friends and participates in various groups through her church.  A.R. at 1333, 1347 (Shaffer attends regular church services and the Celebration Recovery group), 1348, 1363, 1372 (Shaffer is able to get to her church group independently). Additionally, Shaffer continues to live independently with her various support systems.  A.R. at 1366.  Shaffer is still able to drive and continues to do the grocery shopping for herself and her son.  A.R. at 1358, 1348-1350.  Shaffer also makes and attends all of her own Doctor's appointments, A.R. at 1358, 1362-1363, cooks for her son, A.R. at 1360, and does clothes shopping for herself and her son when necessary, A.R. at 1360.

Furthermore, when presented with a very stressful situation, hitting a nun with her vehicle, Shaffer reacted in an appropriate manner by asking if the nun needed to go the hospital and exchanging

16

contact information.  A.R. at 1336-1337.  Moreover, following the accident Shaffer developed a relationship with the nun where they "talked on the phone for months."  A.R. at 1337.

Additionally, the testimony of Shaffer's casework Trudy Hatzenbihler is also consistent with Dr. Martin's findings. Hatzenbihler testified that Shaffer makes her own appointments, attends support groups at her church, and lives independently with the community resources in place.  A.R. at 1363-1366, 1370.

The Court concludes the medical expert's opinion is consistent with other evidence in the record.  Therefore, the ALJ has provided specific and legitimate reasons supported by substantial evidence for rejecting the opinions of Shaffer's treating medical sources.  In light of this conclusion, the ALJ's determination that Shaffer did not satisfy either the B or C criteria for listing under § 12.04 or § 12.06 is free of legal error and supported by substantial evidence.

C.    Residual Functional Capacity

Shaffer argues that the ALJ failed to consider all of her symptoms, and failed to provide an adequate discussion regarding the support for each RFC determination.  Court Doc. 15 at 9.  The Court disagrees.  When determining a claimant's RFC, the ALJ must consider "all of the relevant medical and other evidence."  20 C.F.R. § 404.1545(a)(3).  The ALJ must "consider the limiting effects of all [the claimant's] impairment(s), even those that are not severe, in

17

determining [her] residual functional capacity." Id. at § 404.1545(e).
Furthermore, "[t]he RFC assessment must include a narrative
discussion describing how the evidence supports each conclusion[.]"

Here, contrary to Shaffer's assertions, the ALJ did consider all of
her symptoms, including symptoms arising from her heel spurs and
back pain.  Although Shaffer argues that the ALJ failed to consider
Shaffer's back pain in formulating the RFC, the record clearly
indicates otherwise.  A.R. 40, 42-43, 44.  Moreover, because the ALJ
properly concluded that Shaffer's heel spurs and back pain did not
constitute impairments under the regulations, he was under no
obligation to address them in determining Shaffer's RFC.  As noted
above, the regulations only require the ALJ to consider all symptoms
arising from a claimant's impairments, whether severe or not severe.
20 C.F.R. § 404.1545(e).  Nonetheless, the ALJ took Shaffer's heel
spurs and back pain into consideration when determining her RFC.
A.R. at 40 ("The claimant testified the heel spurs were diagnosed last
spring, back pain was the same, and she had physical therapy for
these problems."), A.R. at 44.   Thus, Shaffer's argument that the ALJ
erred in his consideration of her back pain and heel spurs is
unpersuasive.

Shaffer's argument that the ALJ fails to describe how the
evidence supports each RFC conclusion is also unpersuasive.  The ALJ
relied in large part on Shaffer's own testimony when determining the

limiting effect of her heel spurs and back pain.  A.R. at 40.  Shaffer
testified that no specific limitations had been placed on her as a result
of her foot problems or back problems.  A.R. at 1298-1301; <u>see</u> A.R. at
40.  When considering Shaffer's daily activities and physical
capabilities, the ALJ again relied on her own testimony.  Shaffer
testified that she can "clean, cook, and shop," and that she"make[s]
lists."  A.R. at 40, 1348-1349,1350, 131-139.  Additionally, when
determining how much Shaffer can lift / carry, the ALJ again relied on
Shaffer's testimony.  "She cannot lift/carry very much, maybe can carry
her 50 pound son once, and can lift/carry 10-15 pounds."  A.R. at 40.
This statement by the ALJ accurately reflects Shaffer's testimony that
she can lift her 50 pound son once, A.R. at 1359, can comfortably carry
"ten, 15 pounds," <u>id</u>., and can occasionally carry 20 pounds, <u>id</u>.

Contrary to Shaffer's contentions, the ALJ also provided support
for his other physical RFC determinations.  A.R. at 42-43.  The ALJ
cites the findings of Dr. Rochelle Wolfe that Shaffer is capable of
standing and/or walking for at least two hours in an eight hour work
day and can occasionally perform postural activities.  A.R. 42-43.  Dr.
Wolfe's Medical Source Statement indicates that Shaffer has no
limitations with respect to lifting/carrying, A.R. at 294, is able to stand
and/or walk "at least 2 hours in an 8-hour workday, <u>id</u>., has no
limitation with respect to sitting, A.R. at 295, no limitations with
respect to pushing and/or pulling, <u>id</u>., can occasionally climb

ramps/stairs/ladder/ rope/scaffold, balance, kneel, crouch, crawl, and stoop, id., and has the unlimited ability to reach in all directions, handle, finger, feel, see, hear, and speak, A.R. at 296.  The ALJ also noted that no "functional restrictions" have been placed on Shaffer by a cardiologist and the chest pains resulting in Shaffer's trip to the hospital were secondary to anxiety and not caused by cardiac conditions.  A.R. at 812, 832, 280.

Dr. Wolfe's progress notes indicate that "some of her physical capabilities such as walking great distances or doing a lot of other bending, stooping or reaching can be limited by the shortness of breath she gets and chest pain."  A.R. at 280.  But the record also supports the ALJ's determination that Shaffer's lung functions have been normal. A.R. at 1046, 1050, 194, 195, 196, 198, 199, 203, and 225.  A pulmonologist found that Shaffer's lung function was normal and that Shaffer did not have asthma.  A.R. at 1046.  As a result, the ALJ's treatment of the opinions of Dr. Wolfe, regarding Shaffer's restrictions based on lung function, are free of legal error and based on substantial evidence.  The Court concludes that the ALJ supported each RFC determination with specific evidence from the record, and that the RFC determination was free of legal error and supported by substantial evidence.

VIII.      <u>CONCLUSION</u>

Based on the foregoing, the Court finds that there is substantial evidence in the record to support the ALJ's decision.  The Court further finds that the ALJ's decision is not based on legal error.  Therefore,

IT IS RECOMMENDED that the Commissioner's decision denying SSI and DIB be affirmed.  The Commissioner's motion for summary judgment (Court Doc. 17) should be GRANTED and Plaintiff's motion for summary judgment (Court Doc. 14) should be DENIED.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to these findings must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after receipt hereof, or objection is waived.

DATED this 23rd day of April, 2010.

/s/ Carolyn S. Ostby
United States Magistrate Judge

21